UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

CRAIG THOMAS,                          :

                    Plaintiff,         :     16 Civ. 6105 (AT)(HBP)

        -against-                      :     OPINION
                                             AND ORDER
YRC INC. ITS AGENTS, SERVANTS,
and/or EMPLOYEES, and LANCE D.         :
MORGAN                                 :

                    Defendants.        :

----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/14/18

        PITMAN, United States Magistrate Judge:


I.   Introduction


        Plaintiff Craig Thomas ("plaintiff") commenced this

personal injury action against YRC Inc. ("YRC") and Lance D.

Morgan seeking damages for injuries plaintiff allegedly suffered

in the course of a motor vehicle accident on April 5, 2016 with

one of YRC's truck drivers, Lance D. Morgan.  Plaintiff now seeks

to preclude defendants' expert, Dr. Kevin Toosi, from testifying

at trial because (1) Dr. Toosi lacks the necessary qualifications

to give expert testimony; (2) Dr. Toosi's purported opinion is

not grounded in sufficient facts or data and (3) Dr. Toosi has

previously been precluded from testifying as an expert witness in

New York state court.

For the reasons set forth below, plaintiff's motion to preclude Dr. Toosi's testimony is denied.

## II. Facts

### A. Background

Plaintiff commenced this action on June 7, 2016 in Bronx County Supreme Court, alleging that he suffered severe injuries after Morgan negligently struck the rear of his 2007 Honda Accord while driving a truck belonging to YRC. (Complaint, dated Jun. 7, 2016 (Docket Item ("D.I.") 1-1) ("Compl.")). Plaintiff alleged his vehicle was stopped at a red light on Provost Avenue in the Bronx when Morgan rear-ended him (Compl. ¶¶ 6-12). Morgan alleged that plaintiff bumped the back of YRC's truck and then pulled up along the right side of the truck, causing the two vehicles to sideswipe each other as they were turning right at the corner of Provost Avenue and Boston Road (Lance D. Morgan Deposition, conducted on Dec. 16, 2016, annexed to Defendant's Declaration in Opposition ("Def. Decl.") as Exhibit F (D.I. 19-10) ("Morgan Dep.") at 26-28). The police accident report from the day of the incident indicated that plaintiff's car made a right turn from Provost Avenue onto Boston Road when YRC's truck collided with the rear driver's side of

plaintiff's vehicle (Police Accident Report, dated Apr. 5, 2016, annexed to Plaintiff's Declaration ("Pl. Decl.") as Exhibit 1 (D.I. 24-1)[1] ("Accident Report")). The police did not, however, witness the accident (Accident Report). Defendant properly removed this matter to this Court pursuant to 28 U.S.C. § 1332(a) (Notice of Removal, dated Aug. 1, 2016 (D.I. 1)).

Plaintiff alleged he suffered numerous and significant injuries from the accident, including a torn right shoulder rotator cuff, a torn right knee medial and lateral meniscus, a L5/S1 lumbar spine disc bulge, a C3/4, C3/5, and C3/6 cervical spine disc bulge, C3/4 through C6/7 spinal stenosis, left knee joint effusion, a torn left knee lateral meniscus and that he now suffers from overall pain and has difficulty lifting, bending and sleeping (Pl. Decl. ¶ 4). However, plaintiff also conceded that some of these injuries may be the result of the aggravation of existing injuries from a motor vehicle accident the plaintiff had on December 25, 2015 (Pl. Decl. ¶ 5).

On May 27, 2017, defendants served notice of their intention to call Dr. Toosi at trial as an expert in the fields of medicine and biomechanical engineering to support their theory that plaintiff's injuries were not caused by the April 5, 2016

---

[1]Plaintiff also filed Pl. Decl. and all accompanying exhibits under D.I. 18

accident (Defendant's Expert Witness Disclosure, dated May 27, 2017, annexed to Pl. Decl. as Exhibit 3 (D.I. 24-3) ("Disclosure") ¶¶ 1, 4).

B.  Dr. Kevin Toosi

Dr. Toosi is a biomechanical engineer, with a bachelor's degree in engineering and master's and doctoral degrees in bioengineering from the University of Pittsburgh (Expert Biomechanical Report of Dr. Kevin Toosi, dated May 26, 2017, annexed to Pl. Decl. as Exhibit 3 (D.I. 24-4) ("Toosi Report") at 1). Currently, Dr. Toosi is a principal scientist at Pittsburgh Biomechanics where he specializes in biomedical sciences and the exploration of the cause, and severity of injuries in a variety of accident settings, specifically, occupational environments, slip-and-fall accidents and motor vehicle collisions (Toosi's Report at 1). Prior to this position, Dr. Toosi was an engineer for three years at Exponent Failure Analysis Associates where he worked in the areas of accident reconstruction, crush analysis and occupant kinematics with respect to motor vehicle accidents (Toosi's Report at 1). Dr. Toosi has investigated over 1,200 motor vehicle accidents through accident reconstruction (Curriculum Vitae of Dr. Toosi, revised Apr. 17, 2017, annexed to Pl. Decl. as Exhibit 3 (D.I. 24-10) ("Toosi CV") at 2). Dr. Toosi

4

also teaches in the Department of Bioengineering at the University of Pittsburgh and is actively engaged in clinical research relating to repetitive strain injuries to nerves and tendons (Toosi Report at 1). He has published one article on shoulder ligament injuries in rear-end car crashes and two abstracts relating to motor vehicle accident injuries (Toosi CV at 5).

In addition to Dr. Toosi's engineering training and experience, he also received a medical degree in 1994 from Mashhad University of Medical Sciences in Iran and worked as a primary care physician for over five years in Iran before immigrating to the United States (Toosi Report at 1; Toosi CV at 1). Dr. Toosi's research and work experience for the past 20 years indicates that there are significant crossovers between the fields of medicine and biomechanical engineering, particularly in the area of motor vehicle accidents and injury causation.

In his 26-page expert report, Dr. Toosi concluded (1) impact vehicle acceleration against plaintiff's vehicle resulting from the collision with Morgan's truck was low (conservatively estimated at less than 2g laterally and less than 1g longitudinally); (2) plaintiff's body experienced very limited movement within his vehicle and (3) plaintiff's alleged knee, shoulder and spine injuries could not be attributed to the April 5, 2016 accident due to the minimal impact and body movement (Toosi

Report at 15-22). In reaching these conclusions, Dr. Toosi reviewed numerous reports and documents related to this litigation. In particular, Dr. Toosi relied upon the police accident reports from the December 25, 2015 and April 5, 2016 accidents, plaintiff's pre- and post-accident medical records, photographs of the damage to plaintiff's vehicle and the accident location, insurance documents and the depositions of plaintiff and Morgan (Toosi Report at 2-3). Dr. Toosi also made use of information about the vehicles involved in the accident, including geometry, inertia and stiffness information (Toosi Report at 2-3).

First, Dr. Toosi assessed the severity of the collision between plaintiff and Morgan by analyzing the vehicle acceleration at the time of the crash because acceleration "is the most effective indicator of the severity of collision for the vehicle occupants" (Toosi Report at 15). Dr. Toosi performed this analysis by examining photographs of plaintiff's car taken after the accident and descriptions in the accident report and comparing them with "estimated vehicle stiffness parameters" (Toosi Report at 15). In his report, Dr. Toosi cited five references that confirmed this crush comparison method is a "generally accepted" method in biomechanical engineering to determine the acceleration of a vehicle at the point of impact (Toosi Report at 15). Relying on published crash reports, Dr. Toosi determined that the

optimal spring stiffness for plaintiff's vehicle was 100 to 115 pound-force inches (Toosi Report at 16). Comparing this figure with the crush damage to plaintiff's vehicle and using an accepted coefficient of 0.6 for inter-vehicular friction in sideswipe collisions, Dr. Toosi opined that plaintiff's car experienced a lateral impact of less than 2g and a longitudinal impact of less than 1g (Toosi Report at 16-17). Dr. Toosi also acknowledged that because plaintiff's rear bumper fell off in the collision, there was some evidence of "snagging," which can momentarily increase these acceleration calculations (Toosi Report at 17). However, he concluded any snagging that occurred had a marginal impact on plaintiff's vehicle (Toosi Report at 17).

Next, Dr. Toosi analyzed plaintiff's body movements inside the car at the time of this impact (Toosi Report at 17). Dr. Toosi concluded that based upon the impact acceleration figures, the point of impact and his experience in occupant kinematics, plaintiff's body could have experienced only minor accelerations and that there was no mechanism present to exceed the physiological range of motion of plaintiff's cervical or lumbar spine (Toosi Report at 17).

Therefore, Dr. Toosi opined, that plaintiff's alleged injuries could not be a result of the April 5, 2016 accident

because there was not a sufficiently severe impact during the
collision to create the loads and mechanisms required to cause
such traumatic injuries (Toosi Report at 18-22).

III. <u>Analysis</u>

   A. Admissibility of Expert
      <u>Testimony - Applicable Standards</u>

      In order to be admissible, expert testimony must meet
both the substantive requirements and limitations of Article VII
of the Federal Rules of Evidence.

      Rule 702 of the Federal Rule of Evidence provides:

      A witness who is qualified as an expert by
      knowledge, skill, experience, training, or education
      may testify in the form of an opinion or otherwise if:

            (a) the expert's scientific, technical, or other
            specialized knowledge will help the trier of fact
            to understand the evidence or to determine a fact
            in issue;

            (b) the testimony is based on sufficient facts or
            data;

            (c) the testimony is the product of reliable prin-
            ciples and methods; and

            (d) the expert has reliably applied the principles
            and methods to the facts of the case.

The proponent of expert testimony bears the burden of
establishing its admissibility by a preponderance of the evi-
dence. <u>United States v. Williams</u>, 506 F.3d 151, 160 (2d Cir.

2007), citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593 n.10 (1993). However, "the rejection of expert testimony is the exception rather than the rule." Advisory Committee Notes to the 2000 Amendments to Fed. R. Evid. 702; Highland Capital Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 185 (S.D.N.Y. 2008) (Leisure, D.J.). "The admission of expert testimony is committed to the broad discretion of the District Court and will not be disturbed on review unless found to be 'manifestly erroneous.'" United States v. Wexler, 522 F.3d 194, 204 (2d Cir. 2008), citing United States v. Duncan, 42 F.3d 97, 102 n.3 (2d Cir. 1994).

Under Rule 702, the first step in determining the admissibility of expert testimony is "whether the expert is qualified to testify." Artista Records LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409, 422 (S.D.N.Y. 2009) (Katz, M.J.), quoting Zaremba v. General Motors Corp., 360 F.3d 355, 360 (2d Cir. 2004); see also Boykin v. Western Exp., Inc., 12 Civ. 7428 (NSR)(JCM), 2015 WL 539423 at *3 (S.D.N.Y. Feb. 6, 2015) (Román, D.J.); Baker v. Outfitters, Inc., 254 F. Supp. 2d 346, 352-53 (S.D.N.Y. 2003) (Preska, D.J.) In doing so, the District Court must "ascertain whether the proffered expert has the educational background or training in a relevant field." Boykin v. Western Exp., Inc., supra, 2015 WL 539423 at *3, quoting Cary Oil Co. v. MG Ref. & Mktg., Inc., 99 Civ. 1725 (VM), 2003 WL 1878246 at *2

(S.D.N.Y. Apr. 11, 2003) (Marrero, D.J.). The United States Court of Appeals for the Second Circuit has interpreted this qualification requirement liberally. Mancuso v. Consolidated Edison Co., 967 F. Supp. 1437, 1442 (S.D.N.Y. 1997) (Conner, D.J.), citing McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995); see also Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co., 769 F. Supp. 2d 269, 283 (S.D.N.Y. 2011) (Francis, M.J.) ("An expert should not be required to satisfy an overly narrow test of his own qualifications."), quoting Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp., 04 Civ. 7369, 2006 WL 2128785 at *5 (S.D.N.Y. Jul. 28, 2006) (Swain, D.J.).

Once this qualification threshold is met, the court must then look to the expert's particular opinion itself and permit the expert to testify only if the opinion is both relevant and reliable. Feinberg v. Katz, 01 Civ. 2739 (CSH), 2007 WL 4562930 at *6 (S.D.N.Y. Dec. 21, 2007) (Haight, D.J.) ("To be admissible, expert testimony must be both relevant and reliable."), citing Daubert v. Merrell Dow Pharm., Inc., supra, 509 U.S. at 589.

> As the Court explained in Daubert, the trial judge's task is to "ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." In its later opinion in Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999), the Court characterized this task as "the trial judge's general 'gatekeeping' obligation." Daubert set forth a

non-exclusive checklist for trial courts to use in assessing the reliability of <u>scientific</u> expert testimony . . .

In discharging its gatekeeping obligation, the trial judge . . . must first find that the proposed witness's "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702. If the court makes this finding, then "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion, provided (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principals and methods reliably to the facts of the case." <u>Id</u>.

<u>Feinberg v. Katz</u>, <u>supra</u>, 2007 WL 4562930 at *6-*7; <u>see also</u>

<u>S.E.C. v. Badian</u>, 822 F. Supp. 2d 352, 356-57 (S.D.N.Y. 2011)

(Swain, D.J.), <u>amended by</u>, 06 Civ. 2621 (LTS), 2012 WL 2354458

(S.D.N.Y. June 20, 2012); <u>CIT Grp./Bus. Credit, Inc. v. Graco</u>

<u>Fishing & Rental Tools, Inc.</u>, 815 F. Supp. 2d 673, 676-77

(S.D.N.Y. 2011) (Marrero, D.J.).

"Rule 702 is intended to ensure that the expert testimony at issue is 'helpful to the jury in comprehending and deciding issues beyond the understanding of a layperson.'"

<u>Feinberg v. Katz</u>, <u>supra</u>, 2007 WL 4562930 at *7, <u>quoting</u> <u>DiBella</u>

<u>v. Hopkins</u>, 403 F.3d 102, 121 (2d Cir. 2005). An expert witness may not, however, offer testimony that merely rehashes the testimony of percipient witnesses. <u>United States v. Amuso</u>, 21 F.3d

1251, 1263 (2d Cir. 1994) ("A district court may commit manifest

error by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror."); Arista Records LLC v. Usenet.com, Inc., supra, 608 F. Supp. 2d at 424-25 ("An expert who simply regurgitates what a party has told him provides no assistance to the trier of fact through the application of specialized knowledge.").

Finally, performance of the gatekeeping function requires the trial court to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." See Daubert v. Merrell Dow Pharm., Inc., supra, 509 U.S. at 592-93. Factors that trial courts may consider in evaluating the reliability of expert testimony include: "whether a theory or technique had been and could be tested, whether it had been subjected to peer review, what its error rate was, and whether scientific standards existed to govern the theory or technique's application or operation." Nimely v. City of New York, 414 F.3d 381, 396 (2d Cir. 2005), quoting Daubert v. Merrell Dow Pharm., Inc., supra, 509 U.S. at 593-94. "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion

evidence that is connected to existing data only by the _ipse dixit_ of the expert." <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 146 (1997). Indeed, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, <u>Daubert</u> and Rule 702 mandate the exclusion of that unreliable opinion testimony." <u>Amorgianos v. Nat'l R.R. Passenger Corp.</u>, 303 F.3d 256, 266 (2d Cir. 2002).

    B.  Application of the
       Foregoing Principles

      1.  Dr. Toosi's Qualifications

Plaintiff contends that Dr. Toosi's testimony should be preluded because he lacks the necessary background to qualify as an expert witness. Plaintiff does not appear to challenge Dr. Toosi's background in biomechanics;[2] rather, plaintiff argues Dr. Toosi should not be permitted to render an opinion as to whether the April 5, 2016 accident was capable of causing plaintiff's

---

[2]Plaintiff's only challenge to Dr. Toosi's biomechanical engineering expertise is based on the fact that Dr. Toosi was precluded from testifying as a biomechanical expert in an earlier state court matter (Memorandum in Support of Plaintiff's Motion In Limine to Exclude the Expert Testimony of Dr. Kevin Toosie, dated Aug. 11, 2017 (D.I. 25) ("Pl. Memo") at 7). This argument is addressed later in this opinion. In any event, Dr. Toosi's education, training and experience in this field is extensive and clearly qualifies him as an expert witness in biomechanical engineering.

injuries because Dr. Toosi lacks proper medical qualifications. Plaintiff argues that Dr. Toosi is not competent to testify because he obtained his medical degree in Iran, not the United States, he is not a licensed medical doctor in the United States and he is principally employed as a biomechanical engineer, not a medical doctor.

It is well settled that biomechanical experts are permitted to opine as to general causation of injuries in motor vehicle accident cases; i.e., whether the force sustained by a "plaintiff in the subject accident could potentially cause certain injuries." Manlapig v. Jupiter, 14 Civ. 235 (LGS), 2016 WL 916425 at *3 (S.D.N.Y. Mar. 10, 2016) (Schofield, D.J.); see also In re Gen. Motors LLC Ignition Switch Litig., 14 Civ. 8317 (JMF), 2017 WL 2664199 at *4 (S.D.N.Y. Jun. 20, 2017) (Furman, D.J.); Franz v. New England Disposal Techs., Inc., 10-civ.-201 (WF), 2016 WL 3344187 at *4 (W.D.N.Y. Jun. 16, 2016); Morgan v. Girgis, 07 Civ. 1960 (WCC), 2008 WL 2115250 at *5 (S.D.N.Y. May 16, 2008) (Conner, D.J.). However, courts have not permitted biomechanical experts to testify regarding specific injury causation, or the specific cause of a particular injury, unless the expert has medical training. Manlapig v. Jupiter, supra, 2016 WL 916425 at *3 (biomechanic can testify to general injury causation, but not the specific cause of the injuries in question

14

because he does not hold a medical degree and has never received any formal medical training); Morgan v. Girgis, supra, 2008 WL 2115250 at *5-6 (biomechanical expert qualified to testify about the nature and force generated by the accident in question and what effects that force has on the human body, but may not testify as to whether the accident caused the plaintiff's specific injuries because he lacks a medical background).

Plaintiff does not dispute the principle that a biomechanical engineer with a medical degree can testify to specific causation, but rather contends that Dr. Toosi's medical education, training and experience is insufficient to qualify him to give such a specific injury causation opinion.

As noted above, Dr. Toosi obtained his medical degree in 1994 and worked as primary care physician in Iran for over five years during which time he treated and diagnosed patients (Toosi CV at 1). Since immigrating to the United States, Dr. Toosi completed two medically related post-doctoral fellowships at the University of Pittsburgh (Toosi CV at 1). The majority of his research and experience for the past 20 years is closely related to his medical background in that it involves injury causation and rehabilitative medicine. This is in stark contrast to other biomechanical experts who have been precluded from testifying to specific injury causation. Manlapig v. Jupiter,

supra, 2016 WL 916425 at *3 (tenured professor at North Dakota State University's Department of Mechanical Engineering with decades of experience in biomechanics not permitted to testify to the specific cause of plaintiff's injuries because he lacked a medical degree, never received any formal medical training and, by his own admission, was not qualified to render specific injury causation opinions); Morgan v. Girgis, supra, 2008 WL 2115250 at *5-6 (biomechanical engineer without a medical background prohibited from testifying that accident was the cause of plaintiff's injuries); see also Smelser v. Norfolk S Ry. Co., 105 F.3d 299, 305 (6th Cir. 1997), abrogated on other grounds, Morales v. American Hondo Motor Co., 151 F.3d 500 (6th Cir. 1998) (biomechanical expert with no medical training who did not review plaintiff's medical records not qualified to give any expert medical opinions); Bowers v. Norfolk, S. Corp., 537 F. Supp. 2d 1343, 1378 (M.D. Ga. 2007) (biomechanical engineer precluded from opining on specific causation of plaintiff's injuries because he had no experience "examining patients" or "treating and diagnosing medical conditions").

Although plaintiff is correct that Dr. Toosi is not licensed to practice medicine in the United States, this fact alone does not negate the significance of his prior formal medical training, experience treating and diagnosing patients or

his extensive research on the overlap between engineering and medicine. Moreover, objections to an expert's qualifications generally go to the "credibility and weight" of the expert's testimony, not its admissibility. McCullock v. H.B. Fuller Co., supra, 61 F.3d at 1043, citing Daubert 509 U.S. at 596. Disputes as to an expert's qualifications "do not often warrant blanket exclusion of the testimony." CSL Silicones, Inc. v. Midsun Group Inc., 14-cv-1897 (CSH), 2017 WL 6055380 at *5 (D. Conn. 2017), citing McCullock v. H.B. Fuller Co., supra, 61 F.3d at 1043.

Given that the rejection of expert testimony is the exception rather than the rule, "vigorous cross-examination" and "the presentation of contrary evidence" are the appropriate remedies for plaintiff's concerns regarding Dr. Toosi's credentials, not preclusion. United States v. Scheffer, 523 U.S. 303, 335 (1998), quoting Daubert, 509 U.S. at 596.

        2.    The Reliability
              of Dr. Toosi's Opinion

Plaintiff next contends that Dr. Toosi's testimony is not reliable because his opinion is not grounded in sufficient facts or data. In support of this argument, plaintiff offers only one line in his memorandum of law in which he states that because "Toosi never [went] to the accident scene and never

calculate[d] the height and the weight of the plaintiff in the accident," his opinion is unreliable (Pl. Memo at 5). Plaintiff then argues mostly in his reply brief that Dr. Toosi's opinion is also unreliable because the parties dispute how the motor vehicle accident in issue occurred (Plaintiff's Reply Memorandum in Support of Plaintiff's Motion in Limine to Exclude the Expert Testimony of Dr. Kevin Toosi, dated Sept. 22, 2017 (D.I. 21) ("Pl. Reply")). Plaintiff's arguments are meritless.

First, as defendant points out, Dr. Toosi was aware of plaintiff's height and weight at the time he prepared his report based on plaintiff's medical records (Toosi Report at 11).

Second, the fact that Dr. Toosi did not visit the accident location does not render his opinion unreliable. Franz v. New England Disposal Techs., Inc., supra, 2016 WL 3344187 at *4 (biomechanical expert did not need to personally visit the accident site or personally inspect the damaged vehicles to have a sufficient factual basis for his opinion); Morgan v. Girgis, supra, 2008 WL 2115250 at *4 (plaintiff's argument that biomechanical expert's opinion is unreliable because expert did not visit the scene of the accident, inspect the actual damaged vehicles or view photographs of defendant's vehicle is without merit). Dr. Toosi based his opinion on 26 separate documents relating to this litigation, including photographs of the

18

accident location (Toosi Report at 2-3). Such facts and data are sufficiently reliable to support the opinion of Dr. Toosi -- a biomechanical expert -- concerning the injuries that resulted from a motor vehicle accident. <u>Manlapig v. Jupiter</u>, <u>supra</u>, 2016 WL 916425 at *2 (biomechanical expert's opinion based on sufficient facts and data where the expert relied on the accident report, plaintiff's discovery responses, photographs of the accident location and plaintiff's damaged vehicle, deposition testimony and plaintiff's medical records); <u>Boykin v. Western Exp., Inc.</u>, <u>supra</u>, 2015 WL 539423 at *6 (sufficient factual basis where expert relied on opposing expert's report, deposition testimony, photographs of vehicle damage, the police report and plaintiff's medical records); <u>Morgan v. Girgis</u>, <u>supra</u>, 2008 WL 2115250 at *2-4 (sufficient factual basis where biomechanical expert relied on the police accident report, deposition testimony, repair estimates for the damaged vehicles, photographs of the damage to plaintiff's vehicle and plaintiff's medical records).

Finally, the fact that the parties dispute how the accident occurred does not render Dr. Toosi's opinion unreliable. There appears to be relatively minor differences in the record regarding how the accident occurred. Plaintiff alleges that Morgan rear-ended him while he was stopped (Compl. ¶¶ 6-12).

Morgan alleges that plaintiff bumped the back of his truck and then pulled up on his right, causing the vehicles to sideswipe (Morgan Dep. at 26-28). The police accident report states that Morgan collided with the rear driver's side of plaintiff's vehicle as they both turned right (Accident Report). Although Dr. Toosi reviewed all three accounts, it appears he based his calculations on the police accident report (Toosi Report at 4).

Plaintiff argues that Dr. Toosi did not account for plaintiff's vehicle being stopped when the collision occurred and that this omission renders his calculations inaccurate. This may very well be so; however, it does not warrant preclusion of Dr. Toosi's testimony or make his opinion unreliable. Courts have long recognized that the existence of alternative factual scenarios that an expert has not considered in rendering an opinion goes only to the weight and credibility of the expert's testimony, not its admissibility. Franz v. New England Disposal Techs., Inc., supra, 2016 WL 3344187 at *4 (medical expert making assumptions as to plaintiff's body movements during a motor vehicle accident "go to the weight of his testimony, not its admissibility"); Cornell v. Adventure Racing Co., 12-cv-1303 (FJS)(TWD), 2015 WL 4716285 at *13-14 (N.D.N.Y. Aug. 7, 2015) (existence of alternative factual scenarios that an expert has not considered is not a "basis for excluding the testimony [of a

proposed expert], although the trier of fact may ultimately very well reject it when weighing the credibility of the witness"); Harrison v. Ford Motor Co., 11-cv-0804 (MAD)(DEP), 2013 WL 3098695 at *11 (N.D.N.Y. Jun. 18, 2013) (expert ignoring an equally plausible explanation goes to weight not admissibility).

Thus, Dr. Toosi's opinion is grounded on sufficient facts to be admissible. To the extent plaintiff believes Dr. Toosi has failed to consider alternative scenarios or additional facts, his remedy is the introduction of additional evidence and cross-examination. See Amorgianos v. Nat'l R.R. Passenger Corp., supra, 303 F.3d at 266 ("vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"), quoting Daubert, supra, 509 U.S. at 596; Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co., supra, 769 F. Supp 2d at 285 ("Questions over whether there is a sufficient factual basis for an expert's testimony may 'go to weight, not admissibility.'"), quoting Adesina v. Aladan Corp., 438 F. Supp. 2d 329, 343 (S.D.N.Y. 2006) (Keenan, D.J.).

3. Dr. Toosi's Prior
   Preclusion in State Court

Finally, plaintiff cites the fact that Dr. Toosi was previously precluded from testifying as a biomechanical engineer expert in a state court action and argues that he should also be precluded from testifying as an expert here. See Singh v. Siddique, No. 12842/12, 2016 WL 3583905 at *9 (N.Y. Sup. Jun. 29, 2016) (granting plaintiff's motion to preclude Dr. Toosi's expert testimony because Dr. Toosi used speculative information about the defendant's vehicle and outdated information about the plaintiff's vehicle when making his calculations). Defendants, in turn, argue that Dr. Toosi was permitted to testify as a biomechanical expert in a subsequent state court action (Unpublished decision in Myers v. Culler, No. 4578/2014, dated Feb. 1, 2016, annexed to defense motion papers as Exhibit E, (D.I. 19-7)). Defendants also cite to a third state court action in which Dr. Toosi was permitted to testify concerning the injuries the plaintiff suffered after a motor vehicle collision (2016 Jury Verdict Report for Penhasov v. Khaliki, No. 509204/14, dated Dec. 13, 2016, annexed to defense motion papers as Exhibit G, (D.I. 19-9)). In addition, the Appellate Term of the New York Supreme Court ruled that Dr. Toosi was qualified "to render an opinion as an expert on whether the force generated in the

subject motor vehicle accident was sufficient to cause injuries alleged by the plaintiff." Gonzalez v. Palen, 570998/2014, 2015 WL 4460712 at *1 (N.Y. Sup. App. Term Jul. 21, 2015); see also Anderson v. Pirelli Tire, LLC, No. 1327 MDA 2016, 2017 WL 4786407 (Pa. Super. Ct. Oct. 24, 2017) (Dr. Toosi testified for the plaintiff in a strict liability case involving a motorcycle accident).

While the state cases cited by plaintiff and defendants provide some helpful background information, they are by no means binding here because (1) federal and state courts evaluate expert testimony under different standards, see Sean R. ex rel. Debra R. v. BMW of North America, LLC, 26 N.Y.3d 801, 809, 48 N.E.3d 937, 941, 28 N.Y.S.3d 656, 660 (2016) (reaffirming that New York is a Frye test state and expert testimony is only admissible where the expert can show his techniques "generate results accepted as reliable within the scientific community generally"), citing Frye v. United States, 54 App.D.C. 46, 47, 293 F. 1013, 1014 (1923); (2) there is no requirement that an expert be previously qualified to testify, see Celebrity Cruises v. Essef Copr., 434 F. Supp. 2d 169, 178 (S.D.N.Y. 2006) (Francis, M.J.); and (3) every Daubert motion requires a very fact specific inquiry. Kumho Tire Co., Ltd. v. Carmichael, supra, 526 U.S. at 150 (District Court's "gatekeeping inquiry must be tied to the facts

of a particular case"); <u>United States v. Wexler</u>, <u>supra</u>, 522 F.3d at 204 (District Courts are awarded "broad discretion" to evaluate the admissibility of expert testimony and it is an extremely fact specific inquiry); <u>Amorgianos v. Nat'l R.R. Passenger Corp.</u>, <u>supra</u>, 303 F.3d at 266 ("the <u>Daubert</u> inquiry is fluid and will necessarily vary from case to case"). Plaintiff's argument that just because Dr. Toosi's expert testimony was precluded in one state court case that applied different admissibility standards warrants preclusion here, clearly fails. My "rigorous examination" of the facts and methods involved in this specific matter, as required by <u>Amorgianos v. Nat'l R.R. Passenger Corp.</u>, <u>supra</u>, 303 F.3d at 267, demonstrates that Dr. Toosi is qualified in the fields of medicine and biomechanical engineering and that his proposed testimony is relevant and reliable.

IV.  Conclusion

For the foregoing reasons, plaintiff's motion to preclude Dr. Toosi is denied.  The Clerk of the Court is respectfully requested to close Docket Items 23, 24 and 25.

Dated:  New York, New York
        February 14, 2018

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel of Record